UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| R. PEACHER, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) No. 1:22-cv-01348-SEB-MJD |
| | ) |
| D. REAGLE, | ) |
| | ) |
| Respondent. | ) |

**ORDER DISCUSSING PETITION FOR WRIT OF HABEAS
CORPUS AND DIRECTING FURTHER PROCEEDINGS**

Robert Peacher's petition for a writ of habeas corpus challenges his conviction and sanctions in prison disciplinary case ISR 22-03-0126. The parties' submissions leave a factual dispute concerning whether Mr. Peacher was afforded his right to a disciplinary hearing. In this order, the Court addresses Mr. Peacher's other arguments for relief and the process for resolving the material conflict that remains.

**I. Overview**

Prisoners in Indiana custody may not be deprived of good-time credits or of credit-earning class without due process. *Ellison v. Zatecky,* 820 F.3d 271, 274 (7th Cir. 2016); *Scruggs v. Jordan,* 485 F.3d 934, 939 (7th Cir. 2007); *see also Rhoiney v. Neal,* 723 F. App'x 347, 348 (7th Cir. 2018). The due process requirement is satisfied with: 1) the issuance of at least 24 hours advance written notice of the charge; 2) a limited opportunity to call witnesses and present evidence to an impartial decision-maker; 3) a written statement articulating the reasons for the disciplinary action and the evidence justifying it; and 4) "some evidence in the record" to support the finding of guilt. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985); *see also Wolff v. McDonnell,* 418 U.S. 539, 563-67 (1974).

## II. The Disciplinary Proceeding

ISR 22-03-0126 began with a conduct report, issued by Caseworker R. Goodnight on March 30, 2022, concerning an incident that occurred the previous day:

> I, CSW R. Goodnight, was conducting a retaliation monitoring meeting with Offender Robert Peacher 881627 for a substantiated PREA case. During the course of the meeting Offender Peacher made a threatening statement that 2 staff members would be harmed if he was not transferred out of the facility. Specifically the offender said, "I am really on edge right now; The officers are lucky that I had on shower shoes or else it would've been bad for staff."

Dkt. 8-1.

Based on that interaction, Caseworker Goodnight charged Mr. Peacher with threatening. *Id.* Mr. Peacher received the conduct report and written notice of the charge on April 1. Dkt. 8-3 (screening report); dkt. 9 at ¶ 2 (Peacher affidavit).

Reports dated April 4 state that Mr. Peacher refused to attend his disciplinary hearing and that the hearing officer found him guilty based solely on the conduct report. Dkts. 8-7, 8-8. Mr. Peacher disputes these reports and states that he was never called to the hearing. Dkt. 9 at ¶ 7. The hearing officer found Mr. Peacher guilty and assessed sanctions, including a loss of earned credit time and a demotion in credit-earning class. Dkt. 8-7.

Mr. Peacher pursued administrative appeals, which are not at issue in this proceeding. Dkts. 8-10, 8-13; dkt. 8 at 5 ("Respondent is not arguing that Peacher procedurally defaulted his claims.").

## III. Analysis

Mr. Peacher seeks habeas relief on four grounds: he did not receive a formal "screening" of his charges; he was not permitted to present evidence in his defense; no evidence supported the hearing officer's decision; and he was not afforded a hearing as required by *Wolff*. The record precludes Mr. Peacher's first three claims but leaves the fourth unresolved.

2

A.   **Screening**

On April 1, 2022, an officer visited Mr. Peacher's cell and called him to the disciplinary hearing office to receive notice of his conduct report and charge—a process referred to as "screening." Dkt. Dkt. 8-3; 9 at ¶ 2. Mr. Peacher was experiencing a mental health crisis and asked to be screened at his cell. Dkt. 9 at ¶ 2. The officer refused, *id.*, and marked on the screening report that Mr. Peacher refused to be screened, dkt. 8-3.

To the extent Mr. Peacher asserts that the defendants violated the procedures set out in the disciplinary code, he has not identified a basis for habeas relief. Prison policies are "primarily designed to guide correctional officials in the administration of a prison" and not "to confer rights on inmates." *Sandin v. Conner*, 515 U.S. 472, 481–82 (1995). Therefore, claims based on prison policy are not cognizable and do not form a basis for habeas relief. *See Keller v. Donahue*, 271 F. App'x 531, 532 (7th Cir. 2008) (rejecting challenges to prison disciplinary proceeding because, "[i]nstead of addressing any potential constitutional defect, all of [the petitioner's] arguments relate to alleged departures from procedures outlined in the prison handbook that have no bearing on his right to due process"); *Rivera v. Davis*, 50 F. App'x 779, 780 (7th Cir. 2002) ("A prison's noncompliance with its internal regulations has no constitutional import—and nothing less warrants habeas corpus review."); *see also Estelle v. McGuire*, 502 U.S. 62, 68 at n.2 (1991) ("[S]tate-law violations provide no basis for federal habeas relief.").

To the extent Mr. Peacher asserts that he had a due-process right to a screening hearing, he is incorrect. Due process requires that an inmate be given advance "written notice of the charges . . . in order to inform him of the charges and to enable him to marshal the facts and prepare a defense." *Wolff*, 418 U.S. at 564. "The notice should inform the inmate of the rule allegedly violated and summarize the facts underlying the charge." *Northern v. Hanks*, 326 F.3d 909, 910

3

(7th Cir. 2003) (citations and quotation marks omitted). Mr. Peacher admits that he received written notice of the charge and the conduct report later on April 1. Dkt. 9 at ¶ 2. This is all the notice due process required.

### B.    Denial of Evidence

Mr. Peacher argues that he was deprived of his right to present evidence in his defense. It is undisputed that Mr. Peacher did not actually have a hearing—an issue the Court confronts below. Denial of the right to present evidence does not create a separate basis for habeas relief, however, because Mr. Peacher does not state what evidence he would have presented.

Due process only guarantees an opportunity to present *material*, *exculpatory* evidence. *See Piggie v. Cotton*, 344 F.3d 674, 678 (7th Cir. 2003). Evidence is exculpatory if it undermines or contradicts the finding of guilt, *see Jones v. Cross*, 637 F.3d 841, 847 (7th Cir. 2011), and it is material if disclosing it creates a "reasonable probability" of a different result, *Toliver v. McCaughtry*, 539 F.3d 766, 780–81 (7th Cir. 2008).

As the petitioner, Mr. Peacher faces the burden of establishing that any evidence he was denied was material and exculpatory. *See Piggie v. Cotton*, 344 F.3d at 678 (noting the petitioner did not "explain how [the requested witness's] testimony would have helped him" and thus "the district court properly denied relief" on the petitioner's claim that he was wrongfully denied a witness). He has not stated what evidence he would have presented if given the opportunity and therefore has not carried his burden.

### C.    Sufficiency of Evidence

Mr. Peacher next contends that no evidence supported the hearing officer's decision.

In a prison disciplinary proceeding, the "hearing officer's decision need only rest on 'some evidence' logically supporting it and demonstrating that the result is not arbitrary." *Ellison*, 820

F.3d at 274. "[T]he relevant question is whether there is *any evidence* in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455–56 (emphasis added); *see also Eichwedel v. Chandler*, 696 F.3d 660, 675 (7th Cir. 2012) ("The some evidence standard . . . is satisfied if there is any evidence in the record that could support the conclusion reached by the disciplinary board.") (citation and quotation marks omitted).

The "'some evidence' standard" is "a 'meager threshold.'" *Jones*, 637 F.3d at 849 (quoting *Scruggs*, 485 F.3d at 939). Once the Court finds "some evidence" supporting the disciplinary conviction, the inquiry ends. *Id.* This Court may not "reweigh the evidence underlying the hearing officer's decision" or "look to see if other record evidence supports a contrary finding." *Rhoiney*, 723 F. App'x at 348 (citing *Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000)).

Mr. Peacher argues that Caseworker Goodnight's conduct report misrepresents their conversation, *see* dkt. 9 at ¶ 2, but that is not a relevant consideration. This Court is limited to determining whether any evidence before the hearing officer supported a finding of guilt—and the conduct report was the only evidence before the hearing officer.

Caseworker Goodnight's conduct report, dkt. 8-1, indicates that he met with Mr. Peacher shortly after an incident of sexual assault, that Mr. Peacher's allegations were "substantiated," and that their meeting was a formal part of the reporting process. According to Caseworker Goodnight, Mr. Peacher said he was "on edge," which is understandable given the circumstances. The report also recounts that Mr. Peacher stated that "officers" were "lucky" that Mr. Peacher was wearing shower shoes, because "it would've been bad for staff" otherwise. Dkt. 8-1. No information clarifies who the officers were, why they were interacting with Mr. Peacher, why he was wearing shower shoes, or how things would have been worse had he been dressed differently.

5

Caseworker Goodnight construed Mr. Peacher's statement as a threat—although nothing clarifies who was threatened or with what consequence.

>The disciplinary code defines threatening as:
>
>1. Communicating to another person an intent to physically harm, harass or intimidate that person or someone else.
>
>2. Communicating an intent to cause damage to or loss of that person's or another person's property.
>
>3. Communicating an intent to intentionally make an accusation that he/she knows is untrue or false.

Dkt. 8-2 at § 213.

The statement Caseworker Goodnight recorded in the conduct report does not violate this code. Under any definition—including the disciplinary code's—a "threat" is a prospective statement. Mr. Peacher's statement was retrospective. "They were lucky" is a commentary on past events, not a declaration of future intent. Perhaps Mr. Peacher truly intended to harm the unnamed officers, but that intent cannot realistically be inferred from the single statement Caseworker Goodnight captured.

>More important, the conduct report indicates:
>
>1. Mr. Peacher reported a sexual assault that was later substantiated.
>
>2. Caseworker Goodnight met with Mr. Peacher as a formal part of the reporting process to ensure officers were not retaliating against him.
>
>3. Mr. Peacher reported feeling angry with officers.
>
>4. Mr. Peacher was punished for providing exactly the information he was asked to provide.

If Mr. Peacher's statement was limited to what Caseworker Goodnight documented, the decision to punish Mr. Peacher for that statement speaks ill of the prison's operation of both the disciplinary process and the PREA reporting system.

Despite all this, the Court cannot find that the hearing officer's decision was supported by constitutionally insufficient evidence. The Seventh Circuit has warned that the District Court may not grant a habeas petition based strictly on disagreement with the prison staff's reading of its own rules. *Crawford v. Littlejohn*, 963 F.3d 681, 683 (7th Cir. 2020). Such errors "do not support collateral relief in federal court." *Id.* Mr. Peacher's statement did not match the disciplinary code's definition of "threatening," and perhaps his charge demonstrates poor judgment. But the prison staff's errors in applying facts to its rules do not equate to due process violations. Under the prevailing and forgiving legal standard, Mr. Peacher's disciplinary conviction was supported by enough evidence to satisfy due process.

**D.     Hearing**

Finally, Mr. Peacher contends he was deprived of his right to a hearing before an impartial decision-maker. More precisely, he contends he was deprived of his right to a hearing before any decision-maker.

Mr. Peacher contends that no one came to his cell to summon him for his hearing on April 4 and that the hearing officer found him guilty with no hearing at all.  Dkt. 9 at ¶ 7. The respondent stands by the hearing officer's report that Mr. Peacher was summoned but refused to leave his cell. Dkt. 8 at 8–9; dkts. 8-7 and 8-8. The evidence on this issue is squarely in dispute, and it is dispositive.

### IV. Evidentiary Hearing

"[W]hen a prisoner who seeks a writ of habeas corpus provides competent evidence . . . contradicting an assertion by the prison disciplinary board on a material question of fact pertinent to an issue of constitutional law, the district court must hold an evidentiary hearing to determine where the truth lies." *Johnson v. Finnan*, 467 F.3d 693, 694 (7th Cir. 2006). These circumstances

apply to Mr. Peacher's contention that he was convicted without a disciplinary hearing. His petition is **denied** as to all other issues.

The respondent can obviate the need for an evidentiary hearing by vacating the disciplinary proceedings and corresponding sanctions. Otherwise, the Court will set this matter for an evidentiary hearing and appoint counsel for Mr. Peacher. *See* Rule 8 of the Rules Governing Section 2254 Cases ("If an evidentiary hearing is warranted, the judge must appoint an attorney to represent a petitioner who qualifies to have counsel appointed under 18 U.S.C. § 3006A.").

The respondent will have **through May 1, 2023**, to request an evidentiary hearing or notify the Court that it has vacated the disciplinary proceeding and sanctions.

**IT IS SO ORDERED.**

Date: 4/17/2023

_Sarah Evans Barker_
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

R. PEACHER
881627
WESTVILLE - CF
WESTVILLE CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

David A. Arthur
INDIANA ATTORNEY GENERAL
David.Arthur@atg.in.gov