UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| R. PEACHER, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | No. 1:22-cv-01348-SEB-MJD |
| ) | |
| WARDEN, ) | |
| ) | |
| Respondent. ) | |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

Robert Peacher's petition for a writ of habeas corpus challenged his conviction and sanctions imposed in prison disciplinary case ISR 22-03-0126. The Court denied Mr. Peacher's petition with respect to every issue but one, which required an evidentiary hearing. Dkt. 14. Having conducted that hearing and being duly advised, we hold that the evidence adduced demonstrated that Mr. Peacher was not punished without due process. Accordingly, his petition is **denied**, and this action is **dismissed with prejudice**.

**I. Background**

Following a review of the conduct report filed by prison officials against Mr. Peacher, Sergeant John Miller, the hearing officer at Pendleton Correctional facility, a part of the Indiana Department of Correction (IDOC), found Mr. Peacher guilty of a disciplinary violation on April 4, 2022, and assessed sanctions, including a loss of earned credit time. Dkt. 8-7. Sergeant Miller noted in his disciplinary hearing report that Mr. Peacher had refused to participate in the hearing. *Id.* Officer Zachary Fawver also noted in another document dated April 4 that Mr. Peacher refused to leave his cell for the hearing. Dkt. 8-8. Mr. Peacher responded in a sworn statement contending that, rather than a failure to participate on his part, the prison staff did not allow him to attend the

hearing. *See* dkt. 5 at 2. The Court convened an evidentiary hearing to resolve this material factual dispute.

Prisoners in custody in Indiana penal institutions may not be deprived of good-time credits or of credit-earning class without due process. *Ellison v. Zatecky,* 820 F.3d 271, 274 (7th Cir. 2016); *Scruggs v. Jordan,* 485 F.3d 934, 939 (7th Cir. 2007); *see also Rhoiney v. Neal,* 723 F. App'x 347, 348 (7th Cir. 2018). The due process requirement is satisfied with: 1) the issuance of at least 24 hours advance written notice of the charge; 2) a limited opportunity to call witnesses and present evidence to an impartial decision-maker; 3) a written statement articulating the reasons for the disciplinary action and the evidence justifying it; and 4) "some evidence in the record" to support the finding of guilt. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985); *see also Wolff v. McDonnell,* 418 U.S. 539, 563-67 (1974). Mr. Peacher contends that he was deprived of the right to present witnesses or evidence to an impartial decision-maker because he was found guilty and punished with no hearing at all.

## II. Evidence[1]

Mr. Peacher suffers from posttraumatic stress disorder. In times of acute stress, he is at a heightened risk of running away from officers and/or becoming involved in a physical altercation.

On April 1, 2022, Officer Norrod visited Mr. Peacher's cell to ask if he would like to attend a "screening" for his disciplinary charge. Dkt. 8-4. During screening, an inmate is notified of the charge against him and given an opportunity to identify witnesses or evidence he wishes to present at his disciplinary hearing. In Mr. Peacher's unit, screenings occur in a shower room or a shakedown booth.

---

[1] Unless a citation indicates otherwise, all statements of fact are based on testimony presented at the evidentiary hearing. The hearing was transcribed, but neither party ordered a formal transcript, so none appears on the docket.

During Officer Norrod's visit with Mr. Peacher on April 1 regarding the screening, Mr. Peacher said he was experiencing a mental health crisis and that, for his own safety, he wished to remain in his cell. He asked if the screening officer could come to his cell and conduct the screening there. Without replying to that specific inquiry, Officer Norrod walked away and did not return to Mr. Peacher's cell.

Thereafter, Officer Norrod prepared the following written report: "On 4-1-22 Appx 6:17 AM I OFC L. Norrod went to Offender Peacher R 881627 cell 1850 to ask to be seen by Dhb he refused." Dkt. 8-4 (errors in original).



The screening officer, Dean McDonald, completed a screening report noting that Mr. Peacher "refused DHB screening." Dkt. 8-3.



3

Officer McDonald did not interact personally with Mr. Peacher on April 1. Instead, after Officer Norrod's visit to Mr. Peacher's cell, he completed his report and delivered it to Officer McDonald, and Officer McDonald took notice of Mr. Peacher's refusal per Officer Norrod's report.

Under Indiana Department of Correction policy, a staff member should make "every effort . . . to obtain" an inmate's signature acknowledging that he has received and reviewed a disciplinary document. Hearing Ex. J, § IV(B)(2). If an inmate refuses to sign, "a second staff person" should "sign and date the document as a witness to the action," if possible. *Id.* Here, a second staff member did not sign Officer Norrod's statement as a witness to Mr. Peacher's refusal to leave his cell for screening on April 1. *See* dkt. 8-4.

According to Officer McDonald's screening report, Mr. Peacher's disciplinary hearing was scheduled to occur on or after April 4, 2022. Dkt. 8-3. However, on April 4, Officer Fawver's notation in another report stated: "Refused DHB hearing 7:34 AM at cell." Dkt. 8-8.

[Witness statement form showing: Name of witness: Z. Fawver; handwritten note "Refused DMB hearing 7:34am at cell"; Signature dated 4-4-22; Witness S. Hill dated 4-4-22]

Officer Fawver did not recall the specific events recorded in the IDOC's documentation, but he did testify that it was his practice to visit an inmate's cell, invite him to leave for a disciplinary hearing, and then either escort the inmate to the hearing or document his refusal.

4

According to Officer Fawver, in reviewing those notations, he testified that he returned from Mr. Peacher's cell to an office, where he completed his written report and handed it to Sergeant Miller, who signed it to indicate his having received it and witnessed Officer Fawver's signature. However, a second staff member did not sign Officer Fawver's statement as a witness to Mr. Peacher's refusal to leave his cell for the disciplinary hearing on April 4. *See* dkt. 8-8.

Mr. Peacher testified that no officer came to summon him either for his screening or the disciplinary hearing on April 4. Rather, he received copies of the screening and hearing reports weeks later, and was surprised to discover the notations of his refusal, and thus renewed his request to participate in a hearing.

### III. Findings of Fact and Conclusions of Law

The Court finds based on the documents proffered by Respondent and the testimony adduced at the hearing that Officer Fawver did visit Mr. Peacher's cell on April 4, that he summoned Mr. Peacher to his disciplinary hearing as documented in his report, and that Mr. Peacher declined to leave his cell. Accordingly, Mr. Peacher was not deprived of his due-process right to a hearing since he declined to exercise that right.

Despite Mr. Peacher's testimony that no officer visited his cell on April 4, the Court finds based on all the evidence, consistent with well-established procedures for handling disciplinary hearings, it is more likely true that Officer Fawver did summon Mr. Peacher to his hearing on April 4 and that Mr. Peacher refused to leave his cell. This refusal is consistent with his response to Officer Norrod's screening notation on April 1. Three subsidiary facts inform our decision.

First, the timing of Mr. Peacher's first refusal and the disciplinary hearing is significant. Mr. Peacher admits that he declined to leave his cell for the disciplinary screening on April 1 because he was experiencing a mental health crisis and feared for his safety if he were to leave his

5

cell. He testified that his mental health issues commenced in February 2022 and continued through the remainder of the year. It is likely that Mr. Peacher made the same choice not to leave his cell because of his mental health issues a mere three days later.

      Second, Mr. Peacher's reasons for his refusal are also significant. Mr. Peacher testified that he had declined to leave his cell for screening on April 1 because he was experiencing a mental health crisis. He explained in detail that his mental health challenges were serious and long-lasting, in fact continuing over the remainder of the year. Given the severity of Mr. Peacher's PTSD and its impact on his decision not to leave his cell on April 1, we find it likely that he did in fact opt not to attend the April 4 hearing as well.

      Third, we take note of Mr. Peacher's less-than-dependable credibility in his legal dealings with the Court. Mr. Peacher admitted during the evidentiary hearing that Judge Sweeney of our Court has twice found that he previously attempted to mislead the Court in other litigation he had initiated. Resolving this case requires that we choose between two differing factual accounts—Mr. Peacher's and Officer Fawver's. Given his past efforts to mislead the Court, Mr. Peacher is in our view the less credible witness.

      Though Officer Fawver was unable to testify based on his recollections of the specific events surrounding his interactions with Mr. Peacher on April 4—events occurring some 20 months prior, about a routine matter of little apparent importance at the time—we will not discredit Officer Fawver's testimony as unreliable due to a lack of detail.

      Officer Fawver did document Mr. Peacher's refusal to attend the hearing, though he failed to obtain Mr. Peacher's signature on the refusal document or the signature of a second witness as the IDOC's policies preferred. Nor did Officer Norrod obtain Mr. Peacher's signature or that of a second witness during the April 1 encounter. Even so, Mr. Peacher admitted that he refused to

leave his cell on the occasion of his first encounter with the officers. Mr. Peacher's account is decidedly less plausible and reliable, given his motives for tailoring his testimony.

### IV. Conclusion

Based on the evidence before us, we find by a preponderance that the prison staff did not deprive Mr. Peacher of his right to a hearing before imposing punishment as a sanction for his disciplinary violation. No constitutional violation occurred. Accordingly, Mr. Peacher's petition for a writ of habeas corpus is **denied**, and this action is **dismissed with prejudice**. **Final judgment** shall now enter.

**IT IS SO ORDERED.**

Date: 2/9/2024

_Sarah Evans Barker_
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

David A. Arthur
INDIANA ATTORNEY GENERAL
David.Arthur@atg.in.gov

Brent Westerfeld
Brent Westerfeld
blwesterfeld@gmail.com